In the Matter of the ESTATE OF Hugh R. MURPHY, Also Known as Red Murphy, Deceased.

William Pat MURPHY, a/k/a Pat or W.P. Murphy, Petitioner and Appellee,

v.

Sheila MURPHY, Personal Representative of the Estate of Hugh R. Murphy, Respondent, Petitioner and Appellant,

v.

Tom MURPHY, Respondent.

Civil No. 960036.

Supreme Court of North Dakota.

Oct. 1, 1996.

434

John L. Sherman of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for petitioner and appellee.

Michael J. Maus of Howe, Hardy, Galloway & Maus, PC, Dickinson, for respondent, petitioner, and appellant.

SANDSTROM, Justice.

This is a dispute over a contract requiring Hugh Redmond (Red) Murphy, now deceased, to pay his uncle, Pat Murphy, $300 per month for Pat's life. After a bench trial, the district court found: 1) Red Murphy's estate was liable for $300–per–month payments to Pat; 2) Pat Murphy was entitled to the amount Red's estate was in arrears; and 3) Pat Murphy was entitled to attorney's fees. The estate of Red Murphy appeals the judgment, claiming it did not receive a fair hearing because the trial court failed to rule on the motion for guardian ad litem and the motion for joinder until after the hearing. The Murphy estate also argues it was prejudiced because it was not given an opportunity to depose Red's partner, Tom Murphy, and the trial court abused its discretion in awarding attorney's fees. We affirm the district court judgment, except we reverse the award of attorney's fees.

I

Hugh T. Murphy and his siblings, including his brother Pat Murphy, inherited land known as the Murphy Ranch from their parents. Pat Murphy conveyed his share of the ranch to Hugh T. Murphy in exchange for payment of $300 per month. In 1980, Hugh T. Murphy conveyed a portion of the land to his nephews, Red Murphy and Tom Murphy. In consideration for the conveyance, the parties executed an annuity agreement whereby Red Murphy and Tom Murphy would make annual payments to Hugh Murphy. Red and Tom Murphy also orally agreed to take care of their uncle, Pat.

Upon Hugh T. Murphy's death, Pat Murphy was entitled to inherit by intestacy an additional portion of the land. On March 12, 1990, Pat Murphy and Red Murphy agreed in writing that Pat Murphy relinquished any rights to Hugh's estate in exchange for Red paying $300 per month to Pat for the remainder of Pat's life. For the first six months, Red Murphy gave Pat Murphy $300 per month.

In February 1991, Red Murphy and Tom Murphy formed a partnership for the purpose of operating the ranch, to be retroactively effective as of January 1, 1991. On January 9, 1991, Red Murphy conveyed to his brother Tom Murphy one-half of the interest he had acquired from Pat Murphy. For some time, Tom Murphy made payments of $300 per month to Pat Murphy. On May 6, 1994, Red Murphy died. At the time of his death, he and Tom Murphy were each paying $150 per month to Pat Murphy. Red Murphy's wife, Sheila Murphy, continued to pay $150 per month to Pat Murphy. Tom Murphy also paid $150 per month to Pat Murphy during this time.

Pat Murphy filed a creditor's claim against the estate of Red Murphy. The trial court found the agreement between Pat Murphy and Red Murphy had not been altered by the conveyance of half the ranch to Tom Murphy. Therefore, Red Murphy alone was obligated to make the full payment of $300 per month to Pat Murphy. Additionally, the trial court found Pat Murphy was entitled to the full $300 per month from the estate from the date of the agreement, less the payments made by Red. The trial court denied Sheila's motion to join Tom Murphy and awarded Pat Murphy attorney's fees. The trial court also appointed a guardian ad litem for Pat Murphy.

The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06(2). The appeal was filed in a timely manner under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

■ The district court found Red Murphy's estate was liable for the entire $300–per–month payment under the March 12, 1990, contract between Red and Pat. We affirm the district court's findings of fact unless they are clearly erroneous. N.D.R.Civ.P. 52. "[A] finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made." *Shaver v. Kopp,* 545 N.W.2d 170, 174 (N.D.1996). Sheila Murphy concedes the estate is liable on the contract; however, she contends Tom Murphy is liable for one-half of the contractual obligation.

### A

■ Even though Tom Murphy received a one-half interest in the land, acquiring this interest does not make him liable on the contract. *See Home Ins. of Dickinson v. Speldrich,* 436 N.W.2d 1 (N.D.1989) (finding insureds not liable for premium payments even though they benefitted from the policy). Tom Murphy was not a party to the contract. Tom Murphy is liable on the contract only if the payment obligation had been assigned or otherwise transferred from Red Murphy to Tom Murphy.

### B

■ Under N.D.C.C. § 9–11–03, "[t]he burden of an obligation may be transferred with the consent of the party entitled to its benefit, but not otherwise, except as provided by section 47–04–29." N.D.C.C. § 47–04–29 applies to covenants running with the land. For a covenant to run with the land, it must be contained in the grant of land. N.D.C.C.

§ 47–04–24. In this case, there was no reference to the $300 payment in the deed from Red Murphy to Tom Murphy. The transfer of the land was not a transfer of any part of the payment obligation. Since the exception provided in § 47–04–29 does not apply, we consider whether Pat Murphy consented to the transfer of the payment obligation from Red Murphy to Tom Murphy.

### C

■ "An assignment[1] is an expression of intention by the assignor that his duty shall immediately pass to the assignee." 4 Corbin on Contracts § 866 (1960). The benefitted party's consent to such a transfer can be manifested either expressly or by implication. *Benson County Coop. Credit Union v. Central Livestock Ass'n, Inc.,* 300 N.W.2d 236, 241 (N.D.1980). Sufficient evidence supports the district court's finding Pat Murphy did not expressly agree to any modification of the contract. Consent, however, can also be implied through conduct. *Benson County Coop.*

■ Implied consent is "[a]n inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or a lack of objection under circumstances signifying assent." Black's Law Dictionary 305 (6th ed. 1990); *see also Benson County Coop.* at 241 (under the Uniform Commercial Code, "consent may be shown by implication arising from a course of conduct as well as by express words"). Consent is implied when the benefitted party knows of the other party's actions and fails to object to those actions. *See Schaffer v. Smith,* 113 N.W.2d 668, 672 (N.D. 1962) (presuming consent when a property owner knew work was being done and made no objection).

■ There may be an implied acceptance of an assignment when a seller knows of the assignment and accepts payments from the assignee. *See Rosenberg v. Son, Inc.,* 491 N.W.2d 71 (N.D.1992). We distin-

---

1. "Assignment" is generally associated with rights under a contract while the term "delegation" refers to duties. *See Rosenberg v. Son, Inc.,* 491 N.W.2d 71, 73 n. 1 (N.D.1992). Typically, however, the term "assignment" is used with respect to both rights and duties. Thus, we will use the term "assignment" in our analysis of this case.

guish *Rosenberg* from the present case. In *Rosenberg,* the sellers knew of the assignment and accepted payments, which were clearly being made in satisfaction of the original contract, from the assignees. *Rosenberg* at 73. Pat testified he did not know whether any of the payments from Tom Murphy were in satisfaction of the 1990 contract. Tom also testified the payments were not in satisfaction of the 1990 contract. Absent knowledge of the payee that payments from an assignee are in satisfaction of the original debt, there can be no consent to an assignment.

■ Even where there is an effective assignment of a contractual obligation, the assignor's "'duty remains absolutely unchanged.'" *Rosenberg* at 74 (quoting 4 Corbin on Contracts § 866); *see also Smith v. Wrehe,* 199 Neb. 753, 261 N.W.2d 620, 625 (1978); *Brooks v. Hayes,* 133 Wis.2d 228, 395 N.W.2d 167, 170 (1986). The original party remains a guarantor. *Rosenberg* at 74. Therefore, any assignment of the obligation to Tom Murphy would not release Red Murphy from liability on the entire $300 per month.

### D

■ Red Murphy would have been released from a portion of the obligation only if a novation had occurred. *See Rosenberg,* 491 N.W.2d at 74. "The question of whether there has been a novation is a question of fact, which will not be overturned on appeal unless it is clearly erroneous." *Schmitt v. Berwick Tp.,* 488 N.W.2d 398, 401 (N.D. 1992); *see also Herb Hill Ins., Inc. v. Radtke,* 380 N.W.2d 651, 654 (N.D.1986). The district court found no novation occurred.

■ "Novation is made by the substitution of . . . [a] new debtor in the place of the old one with intent to release the latter." N.D.C.C. § 9–13–10(2). "To have a novation, the parties must intend to extinguish the old obligation, there must be mutual assent, and there must be sufficient consideration." *Schmitt v. Berwick Tp.,* 488 N.W.2d 398, 400 (N.D.1992). The acquisition of one-half interest in the land is sufficient consideration

for assuming the debt. *See* N.D.C.C. § 9–05–01 (defining consideration).

■ "If it clearly appears from the terms of the assignment transaction that the assignee intends to undertake the duty to perform for the assignor, and that the latter intends to be himself no longer bound, there is a discharge of the assignor by novation if the third party accepts performance by the assignee with knowledge of the terms of the assignment or otherwise assents to those terms." 4 Corbin on Contracts § 866 (citing *Iowa Bridge Co. v. Comm'r of Internal Revenue,* 39 F.2d 777 (8th Cir.1930)). A valid consent for an assignment does not require a finding of valid consent for a novation. *Rosenberg* at 75-6. "Acceptance of a check does not create a novation in the absence of an agreement by the parties that it substitutes for the original contract." *Schmitt,* 488 N.W.2d at 401. Nothing in the record reflects Tom Murphy intended to release Red Murphy from any part of the obligation. That no novation occurred is supported by the evidence. The district court's finding no alteration of the original agreement is not clearly erroneous.

### E

■ Finally, Sheila Murphy argues the $300–per–month obligation is a debt of the partnership and, as such, Tom Murphy and Red Murphy are jointly liable on the debt. Although the district court did not make a specific finding whether it was a partnership debt, its specific findings preclude it from being material as to Pat. Whether the payment obligation is a debt of the partnership is immaterial to Pat Murphy's claim because even if Tom Murphy were liable on the debt as a partner, Red Murphy would still be liable to Pat Murphy for the entire $300. There is no evidence that Red Murphy believed that Pat Murphy understood the obligation was a partnership one when made. *See* N.D.C.C. § 9–07–14 (ambiguous promise "must be interpreted in the sense in which the promisor believed at the time of making it that the promisee understood it").

**438**

## III

The district court awarded Pat Murphy an additional $150 per month for the prior months in which Red and the estate paid only $150. Sheila Murphy argues the district court erred in finding the estate was in arrears on its payment obligation to Pat Murphy. Pat Murphy received $150 per month from both Tom Murphy and Red Murphy. Upon Red Murphy's death, Sheila Murphy continued to pay $150 per month. Red Murphy's estate claims any obligation it had on the additional $150 per month was extinguished when Tom Murphy made those payments.

■ "[A]n obligation is extinguished by an offer of performance intended to extinguish the obligation." *Resolution Trust Corp. v. Gosbee*, 536 N.W.2d 698, 701 (N.D. 1995); N.D.C.C. § 9–12–08; *see also* 4 Corbin on Contracts § 866. However, under N.D.C.C. § 9–12–01, "[u]pon acceptance by the creditor, full performance extinguishes an obligation if done by the party whose duty it is to perform it or by any other person on his behalf and with his assent." The obligation is extinguished only if performance is made on the contracting party's behalf and with the contracting party's assent. In the present case, Tom Murphy testified his $150–per–month payments to Pat Murphy were in satisfaction of the oral agreement Tom Murphy made to his uncle Hugh T. Murphy in 1980. The evidence supports the finding payments made by Tom Murphy were not made on Red Murphy's behalf and were not made in performance of the 1990 contract between Red Murphy and Pat Murphy. Therefore, Red Murphy's duty was not extinguished by Tom Murphy's performance. The district court's decision to award Pat Murphy the amount the estate was in arrears was not clearly erroneous.

## IV

The estate asserts Tom Murphy is an indispensable party in this action and the district court erred in not joining him as a party. The estate claims:

"In Tom's absence, complete relief cannot be accorded. He has an interest in the subject matter of the action and his absence may leave the estate subject to substantial risk of inconsistent obligations by reason of the claimed interest."

The estate's argument ignores our law, the meaning of "indispensable party," the fact relief for Pat can be obtained without Tom as a party, and the fact the estate could assert claims against Tom in a separate action.

■ Under N.D.R.Civ.P. 19, a person must be joined as a party if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest." "[T]he right to join parties in an action is subject to the sound discretion of the trial court." *Revoir v. Kansas Super Motels of North Dakota, Inc.*, 224 N.W.2d 549, 552 (N.D.1974). The decision of the district court will not be reversed absent an abuse of discretion. *Revoir.*

This Court said in *Erdmann:*

"The purpose of the compulsory joinder rule is to protect an absent party from prejudice, to protect parties from harassment by successive suits, and to protect the courts from being imposed upon by multiple litigation. *Cudworth v. Cudworth,* 312 N.W.2d 331, 333 (N.D.1981). Although the failure to join an indispensable party may be raised for the first time on appeal, '[o]nce the trial has been concluded, the pragmatic considerations in Rule 19 weigh heavily in favor of preserving the judgment of the trial court ... and against dismissal unless there has been real prejudice to those not before the court.' *Cudworth v. Cudworth,* supra, 312 N.W.2d at 334. Dismissal of an action for nonjoinder of a party is an extreme remedy which should only be granted where a party is truly 'indispensable.' *Kouba v. Great Plains Pelleting, Inc.,* 372 N.W.2d 884, 887 (N.D.1985)."

*Erdmann v. Thomas,* 446 N.W.2d 245, 249 (N.D.1989).

■ Parties sought to be joined can be classified as nominal, proper, conditionally necessary, or indispensable. *See* 3A James W. Moore, et al., *Moore's Federal Practice* ¶ 19.02 (2d. ed. 1985) (interpreting Fed. R.Civ.P. 19). N.D.R.Civ.P. 19 is identical to Rule 19, F.R.Civ.P. *See* Explanatory Note. A nominal party is one who stands in "as the next friend" of the real party in interest. 3A *Moore's Federal Practice* ¶ 19.02. Tom Murphy is not a nominal party.

"If ... a 'necessary' party [is used] in the sense that in its 'absence complete relief cannot be accorded among those already parties,' Rule 19(a), N.D.R.Civ.P. provides that such a 'necessary' party should be joined unless the party is not subject to service of process or joinder would defeat jurisdiction or venue. The court is specifically authorized by the rule to order joinder of such a 'necessary' party. But, on this record, it is not clear to us that [the potential party] was a 'necessary' party, let alone an 'indispensable' one. The trial court was able to accord complete relief between [the actual parties]."

*Kouba v. Great Plains Pelleting, Inc.*, 372 N.W.2d 884, 887 (N.D.1985).

In this case as well, the district court was able to accord complete relief between Pat and the estate without joining Tom as a party. The estate was not precluded from pursuing any claim for contribution against Tom in a separate proceeding.

■ "[A] party is 'indispensable' only where the ability of the court to make an equitable adjudication in the absence of that party is seriously impaired *and* where joinder of that party cannot be obtained because of a jurisdictional or other limitation." *Kouba.* " 'Upon a literal reading of Rule 19, a person cannot be an indispensable party unless he ... "cannot be made a party." ' " *Stonewood Hotel Corp., Inc. v. Davis Dev., Inc.*, 447 N.W.2d 286, 289 (N.D.1989) (quoting 3A *Moore's Federal Practice* ¶ 19.05[2] ). Tom Murphy was present and testified at trial. Tom Murphy was not an indispensable party.

■ A "proper" party may "be joined as defendant where there is a question of law or fact in the action common to the right or duty in which he is interested and the rights or liabilities involved [arose] out of the same transaction [or] occurrence." 3A James W. Moore, *Moore's Federal Practice* ¶ 19.02 (2d. ed. 1985). With respect to "proper" parties, "joinder is permissive and is governed by Rule 20." *Id.* A "conditionally necessary" party is a party referred to in rule 19(a)(1) or (2) whose joinder is feasible. *Id.*

■ At best, from the estate's point of view, the liability of Tom and Red is joint and several. If liability is joint and several, joinder is not compulsory. 3A James W. Moore, *Moore's Federal Practice* ¶ 19.02 (2d. ed. 1985). The omitted party is "neither indispensable nor a necessary party under Rule 19." *Wosepka v. Dukart*, 160 N.W.2d 217, 219 (N.D.1968).[2] The plaintiff has the option of suing one or more of the liable parties. *See Fisher v. Mon Dak Truck Lines, Inc.*, 150 N.W.2d 711, 713–14 (N.D. 1967) (referring to joint tort-feasors). " 'If a wrongdoer is neither an indispensable nor a necessary party, a plaintiff in a tort action should not be required to join the wrongdoer as a defendant contrary to his view of the liability of the parties involved.' " *Revoir v. Kansas Super Motels of North Dakota, Inc.*, 224 N.W.2d 549, 552 (N.D.1974) (citing *Wosepka*, 160 N.W.2d at 219). Because Tom Murphy was neither an indispensable party nor a necessary party to this action, the district court did not abuse its discretion in denying the motion to join Tom Murphy as a party.

■ Additionally, "Rule 14(a), N.D.R.Civ. P., enables a defendant, as a third-party plaintiff to serve a summons and complaint 'upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.' " *Kouba* at 887. *See also Wosepka*, 160 N.W.2d at 219 (compulsory use of N.D.R.Civ.P. 19 was not appropriate when N.D.R.Civ.P. 14(a) was available). The estate, however, did not take advantage of this avenue.

---

**2.** Although in *Wosepka* the Court interpreted Rule 19 as it existed prior to its amendment in 1990, no substantive change was intended by the March 1, 1990 amendment.

## V

The estate argues it did not receive a fair hearing because the district court failed to rule on the motion for guardian ad litem and for joinder until after the hearing was concluded. The estate also claims it was prejudiced by being denied the opportunity to depose Tom Murphy. The standard of review on these issues is whether the rulings of the district court were in error and, if so, constituted "harmless error." N.D.R.Civ.P. 61. The rulings on these matters should be disregarded unless they have "affect[ed] the substantial rights of the parties." N.D.R.Civ.P. 61. Sheila has the burden to show her rights have been prejudiced. *See In Re Guardianship of Frank*, 137 N.W.2d 218, 225 (N.D.1965) (recognizing burden).

### A

The purpose for allowing the court to appoint a guardian ad litem is to protect the rights of persons incapable of managing their own affairs. *See Matter of Guardianship of Braaten*, 502 N.W.2d 512 (N.D.1993) (citing Handbook for Guardians ad litem, 66 N.D.L.Rev. 45 (1990)). It is within the district court's discretion to determine when it is appropriate to appoint a guardian ad litem. "[A] trial court may appoint a guardian ad litem on its own initiative at its discretion." *Ludwig v. Burchill*, 514 N.W.2d 674, 677 (N.D.1994) (citing *Healy v. Healy*, 397 N.W.2d 71, 75 (N.D.1986)). The timing of the appointment of the guardian ad litem was not in error.

### B

The district court did not rule on the motion for joinder until the conclusion of the trial. Procedural due process requires the party to be joined know of his status as a defendant before trial. 3A *Moore's Federal Practice* ¶ 19.01–1[2] (citing *Eakins v. Reed*, 710 F.2d 184 (4th Cir.1983)). The parties to the action are entitled to know who the parties to the action are prior to beginning the trial. The district court erred in not ruling on the motion for joinder until the conclusion of the trial. However, since joinder to Tom Murphy was not compulsory, any error in the timing of the court's ruling was harmless.

### C

Sheila Murphy subpoenaed Tom Murphy for a deposition. The trial court granted Tom Murphy's motion to quash the subpoena until his attorney could be present. The trial court also granted Sheila Murphy a continuance to allow for a rescheduling of Tom Murphy's deposition. The deposition was not taken. At trial, Sheila Murphy moved for a second continuance. The district court denied the motion.

"A trial court has broad discretion regarding the scope of discovery, and its discovery decisions will not be reversed on appeal absent abuse of discretion." *Smith v. Smith*, 538 N.W.2d 222, 229 (N.D.1995) (citing *Gerhardt v. D.L.K.*, 327 N.W.2d 113 (N.D.1982)). "A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misapplies or misinterprets the law." *Smith* (citing *Knudson v. Director, North Dakota Dep't of Transp.*, 530 N.W.2d 313 (N.D.1995)). We find the district court's ruling was not an abuse of discretion.

Tom Murphy was present at trial, testified, and called witnesses. *See* N.D.R.Civ.P. 32(a)(3) (allowing depositions to be used when the witness is unable to testify). Also, the record indicates there was sufficient time to take the deposition but the parties had scheduling conflicts. Absent "deliberate abuse of or flagrant bad faith disregard for the rules of discovery," reversal is not an appropriate remedy. *See Thompson v. Ziebarth*, 334 N.W.2d 192, 194–5 (N.D. 1983) (finding the trial court abused its discretion by dismissing a case in which depositions were not taken due to miscommunications and scheduling conflicts). The record in this case does not indicate any such abuse of the rules of discovery.

### VI

The district court ordered Sheila Murphy to pay Pat Murphy's guardian ad litem reasonable attorney's fees and expenses without specifying any authority under which it awarded the fees. "Absent specific contractual or statutory authority, the

'American Rule' requires parties to bear their own attorney's fees." *State Farm Mut. Auto. Ins. Co. v. Estate of Gabel,* 539 N.W.2d 290, 294 (N.D.1995) (citing *Duchscherer v. W.W. Wallwork, Inc.,* 534 N.W.2d 13, 16 (N.D.1995)); *see also Matter of Estate of Rohrich,* 496 N.W.2d 566, 571 (N.D.1993). Under N.D.C.C. § 28–03–04, a guardian ad litem can be appointed by the court for a "person of unsound mind." N.D.C.C. § 30.1–28–04 allows the court to appoint a guardian for an "incapacitated person." "A guardian is a person who has, or is entitled to, the care and management of the person or property of another, or both." *Asendorf v. M.S.S.,* 342 N.W.2d 203, 205 (N.D.1983). "A guardian ad litem, on the other hand, is a special guardian appointed by the court to prosecute or defend [on] behalf of an infant or incompetent in a suit to which he is a party." *Asendorf.* They are distinctly different in meaning. *Asendorf.*

In this case, John L. Sherman was appointed guardian ad litem for Pat Murphy under N.D.C.C. § 28–03–04. There is no contractual or statutory authority under which attorney's fees were awarded. We reverse the trial court's award of attorney's fees.

## VII

The district court judgment is affirmed except for the award of attorney's guardian ad litem fees, which we reversed.

VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.