1997 ND 244

**In the Matter of the ESTATE OF Odelia M. SCHMIDT, Deceased.**

**Gerald SCHMIDT, Petitioner and Appellant,**

v.

**Arnold SCHMIDT, Individually, and as the Personal Representative of the Estate of Odelia Schmidt, Deceased, and Elmer Schmidt, Lorraine Schmidt, and Marlene Sorenson, Respondents and Appellees.**

**Civil No. 970183.**

Supreme Court of North Dakota.

Dec. 23, 1997.

James J. Coles, of Snyder Coles Lawyers, Bismarck, for petitioner and appellant.

Thomas A. Wentz, of Pringle & Herigstad, PC, Minot, for respondents and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Gerald Schmidt appealed two discovery orders, a clarifying order, and an order interpreting Article III(B) of the Odelia M. Schmidt Revocable Trust. We affirm.

[¶ 2] In 1978, Wilson and Odelia Schmidt sold their farmland to their son, Gerald Schmidt, on a contract for deed for $115,000. Wilson died in 1980. During the administration of Wilson's estate, the IRS determined the sale of farmland to Gerald was a bargain sale, and Wilson's estate was required to pay a gift tax.

[¶ 3] In 1983, Odelia executed a will and trust agreement. Article III(B) of the trust agreement provided for an adjustment to Gerald's share of Odelia's estate because of his 1978 purchase of the farmland. Odelia died in 1990. Odelia's son, Arnold Schmidt, was appointed personal representative of the estate.

[¶ 4] Because Gerald had not made the annual payments for many years, the estate sued to cancel the contact for deed. Gerald asserted he made a $30,000 payment that should have been applied to the contract for deed, and asserted Odelia gave him the farm in her will. The district court ordered the cancellation action held in abeyance until the probate court decided if Gerald received the property under Odelia's will and the amount, if any, Gerald owed the estate. The probate court determined Odelia's will did not give the farmland to Gerald, and Gerald owed the estate a principal balance of $94,-703.26, and interest of $38,306.82, for a total of $133,010.08, as of March 16, 1990. Gerald appealed the probate court order to this court. When Gerald failed to file a brief, we dismissed the appeal.[1] Schmidt v. Schmidt, 540 N.W.2d 605, 607 (N.D.1995).

[¶ 5] The estate moved for summary judgment in the cancellation action in district court. The court granted the motion and a judgment was entered canceling the contract for deed and ordering sale of the property at a sheriff's sale. Gerald appealed. We affirmed in Schmidt v. Schmidt, 540 N.W.2d 605 (N.D.1995). The McLean County sheriff issued a sheriff's deed to Arnold Schmidt, personal representative of Odelia's estate, on March 5, 1996. When Gerald refused to surrender possession of the farmland, the estate brought an eviction action. A judgment of eviction was entered on May 16, 1996. Gerald appealed. We affirmed the eviction judgment in Schmidt v. Schmidt, 1997 ND 44, 560 N.W.2d 886.

[¶ 6] In a petition of May 29, 1996, Gerald alleged heirs and devisees other than himself may have received improper distributions from Odelia's estate, alleged a claim for $30,-000 belonging to him and held by Odelia at the time of her death, and alleged he was entitled to the reasonable value of improvements he made to the farmland. The district court issued two discovery orders, one granting the estate's motion for a protective order and one denying Gerald's motion to compel the appearance, testimony, and production of documents by the estate's attorney. On January 6, 1997, the district court issued a sup-

---

1. "The dismissal of an appeal makes the judgment final and res judicata." Schnell v. Schnell, 252 N.W.2d 14, 17 (N.D.1977).

plemental order denying Gerald's claim for $30,000 he paid to Odelia and his claim for improvements to the property lost to the estate in the contract for deed cancellation action. On May 12, 1997, the district court issued an order interpreting Article III(B) of the trust agreement. Gerald appealed.

## I

[¶ 7] Gerald contends the district court erred in granting the estate's motion for a protective order and in denying his motion to compel the appearance, testimony, and production of documents by the estate's attorney. The estate contends the issues raised had already been litigated. "'A trial court has broad discretion regarding the scope of discovery, and its discovery decisions will not be reversed on appeal absent an abuse of discretion.'" *In re Estate of Murphy*, 554 N.W.2d 432, 440 (N.D.1996) (quoting *Smith v. Smith*, 538 N.W.2d 222, 229 (N.D.1995)). From our review of the record, we conclude the district court did not abuse its discretion in issuing its discovery orders.

## II

[¶ 8] Gerald contends the district court erred in denying his claim for $30,000 he asserts should have been credited to the amount owing under the contract for deed and his claim for improvements he made to the farmland before the contract for deed was canceled. The estate asserts those claims are res judicata.

[¶ 9] The law-of-the-case doctrine, under which a legal question decided by an appellate court will not be differently determined in a subsequent appeal in the same case if the facts remain the same, "encompasses not only those issues decided on the first appeal, but also those issues decided by the trial court prior to the first appeal which were not presented for review at the first appeal." *Tom Beuchler Constr., Inc. v. City of Williston*, 413 N.W.2d 336, 339 (N.D.1987). "[C]ollateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380, 383 (N.D. 1992). "Res judicata, or claim preclusion, ... prohibits the relitigation of claims or issues that were raised or could have been raised in a prior action between the same parties or their privies and which was resolved by final judgment in a court of competent jurisdiction." *Id.*

[¶ 10] In Gerald's prior appeal, we specifically said the probate court order issued before the district court ordered cancellation of the contract for deed "was intended as a 'concluding order' on all issues relating to the contract for deed." *Schmidt v. Schmidt*, 540 N.W.2d 605, 608 (N.D.1995). We continued: "Our subsequent dismissal of Gerald's attempted appeal from that order for failure to file a brief rendered the order final and res judicata of all issues therein." *Id.* Thus, the issues about the $30,000 payment and improvements to the farmland are res judicata.

## III

[¶ 11] Odelia executed a will on February 14, 1983, which, after disposing of some personal effects and providing for the payment of expenses and taxes, provided the residue of her estate was to be distributed under a trust agreement she made the same day. Gerald contends the district court erred in interpreting Article III(B) of the trust agreement, which provides for the distribution of assets upon Odelia's death:

"The balance of said trust assets not effectively disposed of under the foregoing paragraph A, shall be distributed to the issue of the grantor who survive her, per stirpes; provided, however, that the following adjustment shall be made with respect to the share passing to grantor's son, Gerald, or if he does not survive grantor, to his issue: The fair market value of the farm land purchased by grantor's said son from grantor's husband and grantor under that certain contract for deed dated August 21, 1978, shall be determined as of the date of grantor's death. Such determination shall be made by a qualified appraiser

selected by grantor's trustee. If the then fair market value of the land exceeds the amount which was paid for said land under said contract for deed, said excess shall be considered in making the division of the residue of grantor's estate as follows. Such excess shall be added to the value of the residue available for distribution and the shares to which grantor's issue are entitled shall then be determined. There shall be subtracted from the share of grantor's son, Gerald (or his issue if he does not survive grantor), the amount of such excess."

Interpreting that provision, the district court found Gerald paid $115,000 for the farmland in 1978, found the appraised value of the farmland was $275,000 as of the date of Odelia's death, and ordered Gerald's share of the Trust's assets reduced by $160,000.

[¶ 12] Gerald contends Odelia's purpose in executing the Trust was to equalize the share of her estate "so that all of Odelia's children will receive approximately equal shares of her estate as if she had owned the farm at the time of her death" and that "any gift to Gerald was conditional and because the farm has now reverted to Odelia's successors the value of that gift is *zero* and the adjustment to Gerald's share should also be zero."

[¶ 13] "When construing a trust instrument, our primary objective is to ascertain the settlor's intent." *Hecker v. Stark County Social Serv. Bd.*, 527 N.W.2d 226, 229 (N.D.1994). "When a trust instrument is unambiguous, the settlor's intent is ascertained from the language of the trust document itself." *Id.* at 230. "Whether or not a trust is ambiguous is a question of law, fully reviewable on appeal." *Id.* at 230.

[¶ 14] We conclude Article III(B) of the trust agreement unambiguously provides that the amount Gerald paid for the farmland ($115,000) under the contract for deed, is to be subtracted from the fair market value of the farmland as of the date of Odelia's death ($275,000), and the difference ($160,000) is to be added to the residue available for distribution and subtracted from Gerald's share. We conclude, therefore, that the district court correctly interpreted Article III(B) of the trust agreement. We recognize the result may appear harsh to Gerald, since he lost the land to the estate when the contract for deed was canceled for nonpayment. However, Gerald enjoyed the use of the land and all the income it produced since 1978.

[¶ 15] The orders are affirmed.

[¶ 16] NEUMAN and MARING, JJ., RALPH J. ERICKSTAD, Surrogate Judge, and WILLIAM W. McLEES, District Judge, concur.

[¶ 17] WILLIAM W. McLEES, District Judge, and RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of MESCHKE and SANDSTROM, JJ., disqualified.