Filed 4/6/09 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2009 ND 51

Henry J. Langer and Mary Ann Weiss, Plaintiffs and Appellants

v.

Phillip M. Pender, individually, as Trustee 

of the Phillip M. Pender and Josephine I. 

Pender Revocable Inter Vivos Trust Agreement

dated November 20, 1996, and as Personal

Representative of the Estate of Josephine I. Pender, Defendant and Appellee

No. 20080115

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

MODIFIED AND AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Mark R. Hanson (argued) and Kristi L. Haugen (on brief), Nilles, Ilvedson, Plambeck & Selbo, Ltd., P.O. Box 2626, Fargo, N.D. 58108-2626, for plaintiffs and appellants.

Christopher M. McShane, Ohnstad Twichell, P.C., P.O. Box 458, West Fargo, N.D. 58078-0458, for defendant and appellee.

Langer v. Pender

No. 20080115

Sandstrom, Justice.

[¶1] Henry J. Langer and Mary Ann Weiss appeal from a district court judgment dismissing on summary judgment their declaratory judgment action against Phillip M. Pender to enforce the terms of a revocable inter vivos trust agreement.  We hold the district court properly concluded that the trust agreement remained revocable after the death of Josephine I. Pender and that Phillip Pender’s revocation of the trust was in compliance with the trust agreement.  We modify and affirm.  

I

[¶2] On November 20, 1996, Josephine Pender and Phillip Pender, as husband and wife, executed a “Revocable Inter Vivos Trust” agreement.  The introductory paragraphs of the trust agreement contain the declaration of trust, in addition to naming the primary beneficiaries of the trust, stating:

THIS DECLARATION OF TRUST, made and entered into on the date set forth on the signature page hereto, by and between Phillip M. Pender and Josephine I. Pender, of Cass County, State of North Dakota, hereinafter sometimes referred to in the aggregate as “Trustors,” or individually as “Husband” and “Wife” respectively, “Spouse,” or as [“]Co-trustors,” and Phillip M. Pender and Josephine I. Pender, of Cass County, State of North Dakota, hereinafter referred to as “Co-trustees” or sometimes as “Trustee(s),” “Initial Co-trustees” or “Initial Trustees.”

Reference in this Trust to the “Trustors,” or any variation thereof, shall be a reference to the “Grantors” or “Settlors” of the Trust, all three words being, for these purposes, synonymous.  Reference to the “Trustee(s)” shall be deemed a reference to whoever is serving as Trustee, or Co-trustee, whether original, alternate or any successor thereof, and references to “Trust” or “Trust Estate” shall be interchangeable as the context allows and relate to the Separate Trust Estate of the various trusts created herein when such terms are used in connection therewith.

The primary Beneficiaries of this Trust shall be Phillip M. Pender and Josephine I. Pender.

 

(Emphasis added.)

[¶3] The trust agreement purports to create several trusts.  Specifically, Article 18 of the trust agreement states:  “The Revocable Inter-Vivos Trust shall be referred to as the PENDER FAMILY LIVING TRUST.  Other trusts created herein may be known by other names as provided in the ARTICLES and Sections creating them.”  For purposes of this opinion, the “Pender Family Living Trust” will hereafter be referred to as the “Pender Trust.”  The trust agreement also expressly purports to create the Pender Special Trust [Article 1(D)], Decedent’s Trust [Article 1(D)(4)], Survivor’s Trust [Article 1(D)(4)], and Pender Vehicle Trust [Article 1(E)].

[¶4] After executing the trust agreement, Josephine Pender conveyed to the trust certain real property, which she had held in her own name.  Josephine Pender also executed a will, which upon her death transferred her interest in another parcel to the trust for distribution according to its terms.  Josephine Pender and Phillip Pender were married later in life and had no children together.  Josephine Pender and Phillip Pender were named as co-trustees of the trust, and Phillip Pender is the personal representative of Josephine Pender’s estate.  In June 2006, Josephine Pender died.  In April 2007, Phillip Pender transferred the specified trust property to himself through a trustee’s deed, as trustee of the Survivor’s Trust created under the trust agreement.

[¶5] In June 2007, Langer and Weiss, Josephine Pender’s brother and sister, began this action against Phillip Pender in his individual capacity, as the trustee of the Phillip M. Pender and Josephine I. Pender Revocable Inter Vivos Trust agreement, and as the personal representative of the Josephine I. Pender estate.  Langer and Weiss alleged that Phillip Pender improperly transferred real property to himself, violating Josephine Pender’s estate planning documents, including the trust agreement.  Langer and Weiss sought rescission of the trustee’s deed and personal representative’s deed, which Phillip Pender had executed in his capacity as trustee and as personal representative, conveying the certain real property to himself individually.  Langer and Weiss also sought to require Pender to convey the property to Langer and Weiss, as tenants in common.  Langer and Weiss sought reasonable attorney’s fees and costs based upon Phillip Pender’s alleged breach of fiduciary duties to both Josephine Pender’s estate and the trust. 

[¶6] Langer and Weiss moved for summary judgment, and Phillip Pender responded by opposing their motion and filing a motion for summary judgment.  In December 2007, the district court held a hearing on the parties’ motions.  In February 2008, the court entered an order denying Langer and Weiss’s summary judgment motion, and instead granted summary judgment in favor of Phillip Pender, individually and in his various capacities.  

[¶7] The district court concluded as a matter of law that the Revocable Inter Vivos Trust agreement entered into by Phillip Pender and Josephine Pender remained revocable until both trustors have died.  The court held that Phillip Pender’s actions in revoking the trust were in compliance with the trust agreement.  The court further determined that Langer and Weiss were eliminated as beneficiaries as a result of contesting the trust in this action.  The court also concluded, in the alternative, that if this Court determined that the trust was so hopelessly conflicting as to render it unenforceable, then “in the alternative, the trust fails and any conveyance or devise to the trust fails.”

[¶8] Langer and Weiss thereafter moved the court to reconsider its summary judgment decision, which the court denied.  Langer and Weiss appealed from the judgment granting the motion for summary judgment and from the order denying the motion to reconsider.

[¶9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-05-06 and 32-23-01.  The appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28-27-

01, 28-27-02, and 32-23-07.

II

[¶10] Under N.D.R.Civ.P. 56(c), summary judgment is appropriate “if either litigant is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes will not alter the result.”  
Duemeland v. Norback
, 2003 ND 1, ¶ 8, 655 N.W.2d 76.  Whether the district court properly granted a summary judgment motion “is a question of law that we review de novo on the record.”  
Trinity Hosps. v. Mattson
, 2006 ND 231, ¶ 10, 723 N.W.2d 684.

[¶11] A party who moves for summary judgment must demonstrate “no genuine issues of material fact [exist] and the case is appropriate for judgment as a matter of law.”  
Trinity Hosps.
, 2006 ND 231, ¶ 10, 723 N.W.2d 684.  In deciding whether summary judgment was properly granted, “we . . . view the evidence in the light most favorable to the party opposing the motion,” giving that party “the benefit of all favorable inferences which can reasonably be drawn from the record.”  
Hasper v. Center Mut. Ins. Co.
, 2006 ND 220, ¶ 5, 723 N.W.2d 409.  “[I]f the movant meets its initial burden of showing the absence of a genuine issue of material fact, the party opposing the motion may not rest on mere allegations or denials in the pleadings, but must present competent admissible evidence by affidavit or other comparable means to show the existence of a genuine issue of material fact.”  
Riemers v. Grand Forks Herald
, 2004 ND 192, ¶ 4, 688 N.W.2d 167.

[¶12] Additionally, while our rules do provide for a “motion to reconsider,” where appropriate, “we have treated such motions as motions to alter or amend the judgment under N.D.R.Civ.P. 59(j), which may be reversed if the [district] court misinterpreted or misapplied the law.”  
White v. Altru Health System
, 2008 ND 48, ¶ 7, 746 N.W.2d 173; 
see also
 
Ellingson v. Knudson
, 498 N.W.2d 814, 817 n.5 (N.D. 1993) (treating motions to reconsider summary judgment like motions to amend or alter judgment under N.D.R.Civ.P. 59(j)).  The district court’s decision on a Rule 59(j) motion is reviewed under the abuse of discretion standard.  
Korynta v. Korynta
, 2006 ND 17, ¶ 7, 708 N.W.2d 895.  A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.  
Id.
 (quotation omitted).

III

[¶13] This case involves the interpretation of a 48-page trust agreement executed by Josephine Pender and Phillip Pender on November 20, 1996.  This Court’s primary objective in construing a trust instrument is to ascertain the settlor’s intent.  
Alerus Fin., N.A. v. Western State Bank
, 2008 ND 104, ¶ 21, 750 N.W.2d 412; 
Matter of Estate of Schmidt
, 1997 ND 244, ¶ 13, 572 N.W.2d 430.  “When a trust instrument is unambiguous, the settlor’s intent is ascertained from the language of the trust document itself.”  
Hecker v. Stark County Soc. Serv. Bd.
, 527 N.W.2d 226, 230 (N.D. 1994).  “Whether or not a trust is ambiguous is a question of law, fully reviewable on appeal.”  
Id.

[¶14] General rules of construction of written documents apply to the construction of trust instruments.  
See
 
Alerus
, 2008 ND 104, ¶¶ 18-19, 750 N.W.2d 412.  In North Dakota, the interpretation of a contract is governed by N.D.C.C. ch. 9-07.  Under N.D.C.C. § 9-07-02, the contract language governs its interpretation “if the language is clear and explicit and does not involve an absurdity.”  Contracts are construed to give effect to the parties’ mutual intention at the time of contracting “so far as the same is ascertainable and lawful.”  N.D.C.C. § 9-07-03.  The rules provided in N.D.C.C. ch. 9-07 are applied “[f]or the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful . . . .”  N.D.C.C. § 9-07-03.  “When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of [N.D.C.C. ch. 9-07].”  N.D.C.C. § 9-07-04.  “The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable.  Each clause is to help interpret the others.”  N.D.C.C. § 9-07-06.

[¶15] “A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.”  N.D.C.C. § 9-07-08.  “Particular clauses of a contract are 
subordinate to its general intent.
”  N.D.C.C. § 9-07-15 (emphasis added).  “Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause subordinate to the general intent and purposes of the whole contract.”  N.D.C.C. § 9-07-17.  “Words in a contract which are inconsistent with its nature or 
with the main intention of the parties
 are to be rejected.”  N.D.C.C. § 9-07-18 (emphasis added).

IV

[¶16] In this case, the parties made cross-motions for summary judgment in the district court.  On appeal, the parties agree that summary judgment was appropriate for resolution of this case and that there are no genuine issues of material fact. The issue before us involves the proper interpretation of the Penders’ November 1996 trust agreement.  

[¶17] Langer and Weiss argue that Phillip Pender exceeded his authority as a co-

trustee by conveying the real property Josephine Pender had contributed to the trust to himself and by revoking the trust agreement.  Langer and Weiss further argue Pender should have instead immediately distributed the property to them upon the death of Josephine Pender under the express language of the trust agreement.  Relying on Articles 1(F) and 5(A)(10) of the trust agreement, Langer and Weiss contend that property transferred to the trust retained “its original character” with respect to ownership rights and that the separately-owned property constituted the “separate trust estate” of the trustor who transferred the property.

[¶18] Article 1(F) of the trust agreement states:

F.  During the joint lives of the Trustors, any property transferred to this Trust, and/or other trusts created herein, 
shall retain its original character as to ownership rights
, and, in the event of revocation, the Trustee(s) shall distribute such property to the Trustors based upon the same property rights they had prior to its transfer to the Trust, 
except with regard to assets which have been transferred into any irrevocable trust created herein, which may not be transferred back to the Trustors, or either of them, or revoked, but which will continue to retain its original character for purposes of determining whether the assets in such irrevocable trust form a part of the assets of the DECEDENT’S TRUST or the SURVIVOR’S TRUST.
  Any and all gifts made by the Trustors of Trust assets shall constitute a revocation by the Trustors as to such property, and, therefore, a gift by any Trustor having an interest in that property would also constitute a revocation.

(Emphasis added.)  Article 5(A)(10) of the trust agreement states:

10.  The use of the term “Separate Trust Estate” shall include those assets transferred to the Trust, and/or other trusts created herein, by one or the other of the Trustors individually.  If the property or assets so transferred were, prior to such transfer, owned by either Trustor separately, then such asset shall be a part of the “Separate Trust Estate” of the Trustor who transferred such asset to the Trust.

[¶19] The record reflects that only Josephine Pender contributed property to the trust and that no property was specifically transferred to the Pender Special Trust under Article 1(D), which purports to be expressly irrevocable under the trust agreement.  Further, Phillip Pender and Josephine Pender were named co-trustees of the trust.  Relying on Articles 4(A) and 5(C)(1) of the trust, Langer and Weiss argue that Josephine Pender’s “separate trust estate” became irrevocable when she died and that the property should have been immediately distributed to Langer and Weiss with Phillip Pender retaining only a life estate in “the home.”  Specifically, Article 4(A) states:

A.  Upon the death of the first to die Trustor, any portion of the Joint Trust Estate, to which the decedent had or has any right under law, or as provided in this Trust Agreement, and 
any portion of the deceased Trustor’s Separate Trust Estate which is not specified in ARTICLE FIVE to be distributed to Beneficiaries other than the survivor of them, shall be distributed to the Survivor of them
, taking the 100% Marital Deduction allowed under Internal Revenue Code Section 2056, or any subsequent Section of the Code affecting same and shall be allocated to the SURVIVOR’S TRUST, held and administered as provided herein by the Trustee(s) until the Surviving Trustor’s death, at which time the Trust Estate shall be held and administered by the Successor Trustee(s) designated in ARTICLE SIXTEEN herein and distributed as provided in ARTICLE FIVE.

 

(Emphasis added.)  Article 5(C) of the trust agreement states:

C.  On the death 
of the Trustors
, the Trustee(s) shall divide the remaining assets of the Trust Estate into shares 
among the following Beneficiaries according to the percentages specified below
 for distribution of principal and/or income.  Each share shall be added to any assets distributed in Section B of this ARTICLE and shall constitute and be held, administered and distributed by the Trustee(s) as a separate trust.

1.  To Josephine I. Pender’s brother, Henry J. Langler [sic], shall be distributed an equal fifty percent (50%) share, to Josephine I. Pender’s sister, Mary Ann Weiss, shall be distributed an equal fifty percent (50%) share.  If Henry J. Langler [sic] has not yet fully repaid the five thousand dollars ($5,000.00) borrowed from Josephine I. Pender, the balance is to be deducted from his share, plus eight percent (8%) annually. 
 The aforementioned distributions are to be made immediately upon the death of Josephine I. Pender.
  
If she shall be the first to die Trustor, Phillip M. Pender shall retain the right to occupy and use the home until his death.

 

(Emphasis added.)

[¶20] In support of their argument that Phillip Pender did not have authority to revoke the trust after Josephine Pender’s death, Langer and Weiss contend the language found in Article 5(C)(1) demonstrates Josephine Pender’s intent and requires the distribution of the shares of the separate trust estate to Langer and Weiss as beneficiaries “immediately” upon Josephine’s death.

[¶21] In support of his actions under the trust agreement, however, Phillip Pender relies on  Articles 2(A) and 2(B).  Phillip Pender maintains that he was authorized to revoke the Survivor’s Trust and distribute the property to himself under Articles 2(A) and 2(B).  Article 2 of the trust agreement states, in relevant part:

A.  During the joint lives of the Trustors, the right and power is hereby reserved to each Trustor to alter, amend, or revoke this agreement, in whole or in part, at any time, or from time to time, by instrument in writing delivered to the Trustee(s), except insofar as it affects any irrevocable trust created herein, or as limited elsewhere herein, provided, however, that in the case of amendments, the duties, powers and responsibilities of the Trustee(s) shall not be substantially altered or amended without the written consent of the Trustee(s).  If any amendment hereto is made by the Trustors while also serving as Co-trustees, or the survivor of them while serving as sole Trustee, no written notice shall be required, even if the duties, responsibilities and powers of the Trustee(s) shall be substantially altered.  In the case of revocation, any property held hereunder, or that part thereof as to which this agreement may or shall be revoked, shall be delivered by the Trustee(s) to the revoking Trustor or Trustors.

 

B.  
From and after the death of the first to die Trustor, any assets of the Decedent’s Separate Trust Estate and those assets of the Decedent’s share of the Joint Trust Estate shall be distributed to the Surviving Trustor by such deceased Trustor
, and shall merge with the Survivor’s share of the Joint Trust Estate and any assets of the Surviving Trustor’s Separate Trust Estate, and the resulting Trust shall become known as the SURVIVOR’S TRUST, and this Agreement shall govern the SURVIVOR’S TRUST, 
and may be revoked or amended at any time and from time to time, in whole or in part, by the Surviving Trustor
, by delivering written notice of revocation or amendment to the Trustee, except insofar as affects any assets forming a part of any irrevocable trust created herein, with regard to which this Trust Agreement may not be revoked; provided however, that the duties, powers and responsibilities of the Trustee(s) cannot be substantially altered or amended without his/her/their consent.  If the effect of any amendment hereto only involves the Surviving Trustor no written notice shall be required.  Following the death of the last to die Trustor, the SURVIVOR’S TRUST shall become irrevocable and no amendments will be allowed by any person.

 

C.  In the event of any revocation, the revoking party or parties shall indemnify the Trustee(s), in a manner satisfactory to him/her/them, against liabilities lawfully incurred by the Trustee(s) in the conduct of his/her/their office.  If one of the Trustors has died and the Surviving Trustor is incompetent, such power to revoke, alter or amend the Trust may be determined by a court of proper jurisdiction, or may be exercised by the Guardian or Conservator, if one has been appointed, at the direction of a court of proper jurisdiction, however, this in no case shall subject this Trust to the direction or supervision of any court.  In no case may any revocation, alteration or amendment be allowed which is contrary to the provisions of this instrument or contrary to the intent of the Trustors as expressed within, or with regard to any irrevocable trust created herein.

. . . .

[¶22] Phillip Pender argues that all of Josephine Pender’s “separate trust estate” assets remained in the Pender Trust until her death.  Upon the death of Josephine Pender, the property in the Pender Trust transferred into the Survivor’s Trust by operation of Article 2(B) of the trust agreement, and the Survivor’s Trust remained revocable until the surviving trustor dies.  Phillip Pender asserts that if he, as the sole remaining trustor, were to die before the trust is revoked, only then would the trust property be distributed under Article 5(C) and 5(C)(1).  We agree with Phillip Pender’s construction of the trust agreement for a resulting revocable Survivor’s Trust under Article 2(B) upon Josephine Pender’s death and conclude that the language of the trust agreement allowed Phillip Pender to revoke the trust.

[¶23] In ascertaining whom Phillip Pender and Josephine Pender intended to be the primary beneficiaries of the trust agreement, we look to the trust’s introductory paragraphs.  This declaration of trust plainly and unambiguously states: “The primary Beneficiaries of this Trust shall be Phillip M. Pender and Josephine I. Pender.”  

[¶24] Although Langer and Weiss maintain the specific language of Articles 4(F) and 5(C)(1) control to make Josephine Pender’s “separate trust estate” irrevocable after her death, the introductory clause of Article 5(C) specifically states, “On the death of the Trustors, . . . .”  The term “Trustors” is defined in Article 5(A)(7), which provides:  “The use of the term ‘Trustor,’ ‘Trustors,’ ‘Trustors” or ‘Trustor’s’ in ARTICLE FOUR and ARTICLE FIVE shall include 
both and each
 of the original Trustors designated on page one of the Trust Agreement unless such ‘Trustor’ is specifically identified.”  (Emphasis added.)  We construe this language to require the death of both trustors, Josephine Pender and Phillip Pender, for purposes of the distributions contemplated.  Further, Article 5(C)(1) does not clearly indicate a distribution of Josephine Pender’s “separate trust estate” as required under Article 4(F), to the extent that it exists after her death.

[¶25] We acknowledge Article 5(C)(1) clearly contemplates Langer and Weiss as potential trust beneficiaries upon Josephine Pender’s death and, further, that the last sentence of this subsection at least purports to provide for an “immediate” disposition if Josephine Pender were the “first to die.”  Essentially, we are faced with provisions of the trust agreement that clearly conflict.  The entire trust agreement, however, does not fail.  
See
 N.D.C.C. §§ 9-07-17 (“[r]epugnancy in a contract must be reconciled, if possible . . .”), 31-11-05(32) (“[a]n interpretation which gives effect is preferred to one which makes void”).  We will use contract interpretation principles to decide the proper interpretation.  
See
 N.D.C.C. §§ 9-07-15 (“Particular clauses of a contract are subordinate to its general intent.”), 9-07-18 (“Words in a contract which are inconsistent with its nature or with the main intention of the parties are to be rejected.”).  Given the introductory language of Article 5(C) and the general intent of the trust agreement that the primary beneficiaries are to be Phillip Pender and Josephine Pender, we reject the last sentence of Article 5(C)(1) as inconsistent with the main intention of the parties in executing the trust agreement, and conclude it is inoperative.  
See
 N.D.C.C. § 9-07-18. 

[¶26] In response to Phillip Pender’s position that, upon her death, Josephine Pender’s separate trust estate formed the Survivor’s Trust under Article 2(B), Langer and Weiss argue the Survivor’s Trust created under Article 2(B) cannot be automatically funded by all of the trust’s assets.  Langer and Weiss argue the Survivor’s Trust could not have been funded, because after her death Josephine Pender was no longer able to execute transfer documents to fund the Survivor’s Trust and because Phillip Pender, as surviving trustor, was not directed to transfer any of Josephine Pender’s separate trust estate into the Survivor’s Trust.

[¶27] To the contrary, in funding the Survivor’s Trust, the language of Article 2(B) expressly provides that after the first-to-die trustor’s death, “any assets of the Decedents Separate Trust Estate and those assets of the Decedent’s share of the Joint Trust Estate shall be distributed to the Surviving Trustor by such deceased Trustor, and shall merge with the Survivor’s share of the Joint Trust Estate and any assets of the Joint Trust Estate and any assets of the Surviving Trustor’s Separate Trust Estate . . . .”  Further, Article 4(A) provides that upon the first-to-die Trustor’s death, “any portion of the deceased Trustor’s Separate Trust Estate which is not specified in ARTICLE FIVE to be distributed to Beneficiaries other than the survivor of them, shall be distributed to the Survivor of them, . . . and shall be allocated to the SURVIVOR’S TRUST, held and administered as provided herein by the Trustee(s) until the Surviving Trustor’s death . . . .”  We have determined that Josephine Pender’s separate trust estate was not specifically distributed under Article 5 for purposes of Article 4(A).  Additionally, Article 16(B) states, in part, that “[i]n the event that one of the Trustors dies, while serving as a Co-trustee with the surviving Trustor, the surviving Trustor shall continue to serve as Sole Trustee, unless an additional Co-trustee has been named or the ARTICLE designates that a successor Co-trustee shall serve with the surviving Trustor.”

[¶28] Essentially, Langer and Weiss are contending that either Josephine Pender or Phillip Pender as co-trustees were required to execute transfer documents to Philip Pender as sole trustee of the Survivor’s Trust.  However, neither Josephine Pender nor Phillip Pender needed to execute transfer documents to fund the Survivor’s Trust for property already held in trust under the November 1996 trust agreement because this was accomplished by operation of the trust agreement.  “Generally, [a] successor trustee ‘succeeds to the title of the trust property without the necessity of a conveyance from his predecessor . . . the prevailing theory seems to be that when an appointment is made, title is transferred, not by the authority of the court but by operation of the trust instrument.’”  
Oak Hill Cemetery of Hammond, Inc. v. First Nat. Bank of Kokomo
, 553 N.E.2d 1249, 1251 (Ind. Ct. App. 1990) (holding deed was unnecessary to give trustee bank title to disputed real estate and quoting G. Bogert & G. Bogert, 
Trusts and Trustees
 § 532, at 146 (rev. 2d ed. 1978)).  We therefore conclude that Langer and Weiss’s argument that the Survivor’s Trust was not funded is without merit.

[¶29] This Court has stated, “‘When you intend the facts to which the law attaches a consequence, you must abide the consequence whether you intend it or not.’”  
Matter of Estate of Duemeland
, 528 N.W.2d 369, 371 (N.D. 1995) (quoting 
State ex rel. Sathre v. Moodie
, 65 N.D. 340, 358, 258 N.W. 558, 566 (N.D. 1935) (internal quotation omitted)).  Here, Phillip Pender and Josephine Pender executed the trust agreement which on its face is titled a “Revocable Inter Vivos Trust.”  It is also undisputed that no property was transferred to the Pender Special Trust, as referenced in the agreement.  Further, in the trust agreement’s initial declaration, there is a clear statement of their general intent that they both be the trust’s primary beneficiaries.

[¶30] We believe this interpretation of the trust agreement is consistent with the primary intention of Phillip Pender and Josephine Pender in executing the trust agreement.  We affirm the district court’s judgment to the extent that it holds the revocable inter vivos trust agreement entered into by Phillip Pender and Josephine Pender remained revocable until both trustors have died and that Phillip Pender’s actions in revoking the trust were in compliance with the trust agreement.

V

[¶31] Langer and Weiss argue that the no-contest clause contained in Article 17 of the trust agreement does not operate to extinguish their interest in the trust.  Specifically, Article 17 of the trust agreement, in part, states:

If anyone having an interest in this Trust, or other trusts created herein, or purporting to have an interest in same, and such person or entity 
shall take any action to contest this Trust
 or the Will of either or both Trustors, in any court, such person or entity shall be deleted as a Beneficiary, if they are now listed or come to be listed as a Beneficiary of this Trust.

 

(Emphasis added.)

[¶32] In this case, the district court concluded that Langer and Weiss were eliminated as beneficiaries under the trust because the present action was a contest of the trust.  Langer and Weiss, however, maintain that they are not contesting the trust and believe the trust is valid, and their action is plainly not a challenge to the trust.  
See
, 
Estate of Davies
, 26 Cal. Rptr. 3d 239, 246 (Cal. Ct. App. 2005) (whether there has been a “contest” within the meaning of a no-contest clause depends upon the circumstances of the case and the language used, and even though a no-contest clause is strictly construed to avoid forfeiture, the testator’s intentions control).  Generally, the term “no-contest clause” is defined as:  “A provision designed to threaten one into action or inaction; esp., a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will.”  
Black’s Law Dictionary
 1073 (8th ed. 2004).  Further, the definition of “contest” includes “[t]o litigate or call into question; challenge.”  
Id.
 at 337.

[¶33] Although Langer and Weiss have pursued this action, we agree that they are not challenging or “contesting” the trust as that term is used in this trust.  They have instead sought declaratory relief under N.D.C.C. ch. 32-23 to enforce the trust under its express terms.  We therefore conclude that the no-contest clause found in the trust agreement’s Article 17 is not applicable to the present action.  In view of our resolution in part IV, this portion of the judgment—paragraph number 3—is of no effect.  Similarly, the portion of the judgment—paragraph number 4—providing for the contingency of this Court’s concluding the trust failed is of no effect.  Therefore we modify the judgment to delete those paragraphs.

VI

[¶34] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit.  The district court judgment is modified and affirmed.

[¶35] Dale V. Sandstrom

Carol Ronning Kapsner

Mary Muehlen Maring

Everett Nels Olson, S.J.

[¶36] The Honorable Everett Nels Olson, Surrogate Judge, sitting in place of Crothers, J., disqualified.

VandeWalle, Chief Justice, concurring in the result.

[¶37] When two good arguments can be made for either of two contrary positions as to the meaning of a term in a document, an ambiguity exists.  
Garofalo v. Saint Joseph’s Hosp.
, 2000 ND 149, ¶ 7, 615 N.W.2d 160.  Surely this trust agreement is ambiguous!

[¶38] This case comes to the Court on appeal from a summary judgment after cross-

motions in the trial court for summary judgment and the trial court’s conclusion that the interpretation of the trust agreement was a matter of law.  The trial court also tells us that if we determine that the trust is so hopelessly conflicting so as to be unenforceable, the trust fails.  

[¶39] I am concerned with the posture of the case before this Court.  In 
Metcalf v. Security Intern. Ins. Co.
 the Court observed that:

[T]he interpretation of the parties’ intentions as to the meaning of certain words or phrases in a written contract may involve either a question of law or a question of fact depending on whether or not the interpretation requires the use of extrinsic evidence.  If the parties’ intentions in a written contract can be ascertained from the writing alone, then the interpretation of the contract is a question of law for the court to decide.  If, however, the parties’ intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be determined by the trier-

of-fact.    

 

261 N.W.2d 795, 799 (N.D. 1978) (citations omitted).

[¶40] The majority opinion attempts to resolve the ambiguity of the parties’ intent from the document itself.  In so doing the majority must hold a specific sentence of the trust “as inconsistent with the main intention of the parties in executing the trust agreement” and “conclude it is inoperative.”  To hold otherwise would negate the conclusion that Phillip, the surviving trustor, could convey the property in fee to himself because it would be inconsistent with the provision that he only had a life estate in some of the property, i.e., the home.  The majority relies on a provision of the trust that says the primary beneficiaries of the trust are Phillip and Josephine Pender to determine the main intent of the parties.  I agree, but I am not convinced that the provision regarding the home is inconsistent with the primary beneficiary language.  If there is extrinsic evidence to explain the trustors’ intent in the meaning of the trust language, this is a case that should have been tried, not resolved on cross-

motions for summary judgment.  Neither party has suggested that such evidence is available.  Both parties ask us to interpret the trust as a matter of law but they espouse opposite interpretations.    

[¶41] If extrinsic evidence is available to explain the intention of the parties and the meaning of the trust document I would reverse the trial court’s summary judgment for Pender, affirm the denial of summary judgment for Langer and Weiss, and order the matter be tried.  Neither party has asked for that relief on appeal.  According to the trial court we are left with the option of construing the intent of the parties from the instrument itself or holding that it fails because it is so conflicting as to make it unenforceable.  The majority has taken the former option.  I am not completely convinced the majority’s construction is correct; nor am I convinced the construction Langer and Weiss would have us adopt is correct.  Neither do I believe the document is hopelessly conflicting.  Rather, I expect extrinsic evidence adduced at trial might shed greater light on the intention of the parties and the meaning of the provisions in the trust agreement.  However, given the limited options the parties have presented to the court for resolution of this matter, I cannot disagree with the result reached in the majority opinion.

[¶42] Gerald W. VandeWalle, C.J.