2011 ND 169

**AGNES M. GASSMANN REVOCABLE LIVING TRUST, Wells Fargo Bank, N.A., Petitioner and Appellee**

v.

**Mary REICHERT, Jo Anne Dalhoff, and James Gassmann, Respondents and Appellants**

and

John T. Gassmann, Respondent.

John A. Gassmann Revocable Living Trust, Wells Fargo Bank, N.A., Petitioner and Appellee

v.

Mary Reichert, Jo Anne Dalhoff, and James Gassmann, Respondents and Appellants

and

John T. Gassmann, Respondent.

Nos. 20100275, 20100276.

Supreme Court of North Dakota.

Aug. 23, 2011.

Timothy George Richard (argued) and Ronald H. McLean (appeared), Fargo, N.D., for petitioner and appellee.

Christine B. Long (argued) and Brent B. Green (on brief), Duncan, Green, Brown & Langeness, P.C., Des Moines, IA, for respondents and appellants.

Sara Kaye Sorenson (appeared) and Robert E. Rosenvold (on brief), West Fargo, N.D., for respondents and appellants.

MARIG, Justice.

[¶ 1] Mary Reichert, Jo Anne Dalhoff, and James Gassmann appeal from a district court judgment reforming the terms of their parents' revocable living trusts and determining that John T. Gassmann was to receive farmland held in a limited liability limited partnership in addition to his one-fourth interest in the residue of his parents' trusts. We affirm, concluding the district court did not err in reforming the terms of the parents' trusts and in determining John T. Gassmann received the farmland held in the partnership in addition to his one-fourth share in the residue of his parents' trusts, but we remand for correction of clerical errors in the judgment.

I

[¶ 2] John A. and Agnes Gassmann were married and had four children, John T. Gassmann, Mary Reichert, Jo Anne Dalhoff, and James Gassmann. John A. and Agnes executed separate, identical revocable living trusts to manage their assets.

[¶ 3] In 2001, John A. and Agnes deeded some of their farmland to a limited liability limited partnership entitled "the John Thomas Gassmann LLLP" ("the LLLP"), with each of their respective trusts holding a 49.5 percent partnership interest and their son, John T., who farmed the land, holding a one percent partnership interest. Disposition of John A. and Agnes's interests in the LLLP upon their deaths was provided for in Article Five, Paragraph 6 of the trusts:

Specific Allocation. My Trustee shall distribute all of my ownership interests in the John Thomas Gassmann LLLP and in the [specified farmland] as follows:

a. If my son, John T. Gassmann, survives me, then to my Trustee, and successors in trust, to be handled pursuant to Paragraph 2 of Article Ten.

(1) If John T. Gassmann does not survive me, then this allocation shall be handled for the benefit of his descendants, pursuant to Paragraph 3 of Article Ten.

(2) If none of John T. Gassmann nor any of his descendants survive me, then this allocation shall lapse and shall become a part of the residue of my trust estate.

Paragraph 2 of Article Ten of John A. and Agnes's trusts created generation skipping trusts for each of their four children. Under Paragraph 1 of Article Ten, upon John A. and Agnes's deaths the residue of their trust estates would be divided into equal shares for their four children and distributed to their respective generation skipping trusts.

[¶ 4] After the deaths of John A. and Agnes, a dispute arose among the children whether John T. was entitled to receive the farmland held in the LLLP or whether it was to be distributed equally among the four children under Paragraph 1 of Article Ten of the trusts. Wells Fargo Bank, as trustee of John A. and Agnes's trusts, petitioned the district court for an order clarifying and reforming the terms of the trusts. The attorney who drafted the trusts submitted an affidavit alleging that there was a mistake in drafting the trusts, and that Paragraph 6(a) of Article Five, rather than providing that the settlor's interest in the LLLP was to be distributed to "my Trustee," should have provided that the interest was to be distributed to "the Trustee of the John T. Gassmann Generation Skipping Trust." In response to the petition to reform the trusts, Mary, Jo Anne, and James argued that the trusts unambiguously provided that the interests

in the LLLP were to be distributed equally to the four children's generation skipping trusts under Article Ten, or in the alternative, the interests in the LLLP should pass to John T.'s generation skipping trust but be considered part of his one-fourth share in the residue of the trust assets.

[¶ 5] The district court concluded that the trusts, as written, provided that the LLLP be divided equally among the four children but that there was clear and convincing evidence it was the intent of John A. and Agnes that John T. would receive all of the LLLP. The court therefore ordered that Article Five, Paragraph 6(a) be reformed to provide that, if John T. survived the settlor, the interest in the LLLP would be distributed to "the Trustee of the John T. Gassmann Generation Skipping Trust." The court then read that reformed provision in the context of the remaining provisions of the trust and concluded that John T. was to receive the interests in the LLLP in addition to a one-fourth interest in the remaining residue of the trusts. Judgment was entered accordingly, and Mary, Jo Anne, and James appealed.[1]

II

[¶ 6] Although the parties have raised numerous issues and subissues in their briefs, we believe two issues are dispositive of the appeal: (1) Did the district court err in finding that John A. and Agnes intended that John T. receive the farmland held in the LLLP and that the trusts as written did not correctly express that intent? (2) Did the district court err in construing the reformed trusts as a whole to give John T. the LLLP interests in addition to his one-

---

1. After the notice of appeal was filed, the district court issued a corrected judgment and a corrected memorandum opinion, findings of fact, conclusions of law, and order for judg- ment, correcting clerical errors. Mary, Jo Anne, and James filed a motion in this Court to strike the corrected documents. The motion is denied. *See* N.D.R.App.P. 10(h)(2).

fourth share in the residue of his parents' trusts?

## A

[¶ 7] The district court has the authority to reform the terms of a trust to conform to the settlor's intent:

The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

N.D.C.C. § 59–12–15. The district court in this case, employing the clear and convincing evidence standard, found that it was John A. and Agnes's intent that John T. receive the farmland held by the LLLP and that the trusts as written did not conform to that intent. The court therefore determined that Paragraph 6(a) of Article Five of the trusts should be reformed to state that, if John T. survived the settlors, the trusts' interests in the LLLP would be distributed to the trustee of John T.'s generation skipping trust created in Article Ten, Paragraph 2.

[¶ 8] Mary, Jo Anne, and James argue that the district court's finding is clearly erroneous because the only evidence supporting the finding is the biased testimony of John T. and the attorney who drafted the trusts. John T. testified that he had been told by his father that he would eventually receive the farmland. The crucial testimony, however, came from the drafting attorney, who testified that it was John A. and Agnes's intent to distribute their trusts' interests in the LLLP to the trustee of John T.'s generation skipping trust but that an error occurred in drafting Paragraph 6 of Article Five of the trusts. Evidence from the attorney who drafted the trust that a specific drafting error

occurred and, as a result, the trust language did not conform to the settlor's true intent may, if believed by the trier of fact, constitute clear and convincing evidence sufficient to warrant reformation of the trust. Such testimony, if believed, is direct evidence of a mistake of fact in expression under N.D.C.C. § 59–12–15.

[¶ 9] Mary, Jo Anne, and James contend that this evidence does not rise to the level of clear and convincing because John T.'s testimony was self-serving and the attorney's testimony was "tainted" because he was biased and had a conflict of interest. These assertions, however, merely challenge the credibility of the evidence. This Court has held that, even when reviewing findings made under a clear and convincing evidence standard, determination of the credibility of witnesses is a function of the trial court. *See In re Wolff,* 2011 ND 76, ¶¶ 5, 14, 796 N.W.2d 644; *S.H.B. v. T.A.H.,* 2010 ND 149, ¶ 6, 786 N.W.2d 706; *In re A.B.,* 2009 ND 116, ¶ 16, 767 N.W.2d 817. We accord great deference to the trial court's determination of the credibility of witnesses and the weight to be given their testimony. *See Wolff,* at ¶¶ 5, 14; *S.H.B.,* at ¶ 6. We do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry the case or substitute our judgment for that of the trial court merely because we might have reached a different result. *S.H.B.,* at ¶ 7. The trial court is the best credibility evaluator in cases of conflicting testimony, and we will not second-guess the court's credibility determinations. *Wolff,* at ¶¶ 5, 14; *In re Hanenberg,* 2010 ND 8, ¶ 9, 777 N.W.2d 62. A district court's choice between two permissible views of the evidence is not clearly erroneous. *Wolff,* at ¶ 14; *S.H.B.,* at ¶ 6.

[¶ 10] There was also evidence in addition to the testimony of John T. and the attorney to support the district court's

findings. For example, an intake form completed during the attorney's interview with John A. and Agnes prior to drafting the trusts referenced the disposition of the LLLP upon the death of John A. and Agnes, and the attorney's contemporaneous handwritten notes on the intake form state that John A. and Agnes's respective interests in the LLLP and the farmland was to be distributed "to the trust for the benefit of my son John T. Gassmann" or the benefit of his issue if he was deceased. This documentary evidence strongly supports the district court's finding that John A. and Agnes intended the LLLP interests to pass to John T.'s generation skipping trust and that there was a mistake in expression when the trust was drafted.

[¶ 11] The fact that the LLLP was named the John Thomas Gassmann LLLP also creates an inference that John T. would eventually receive the farmland. The drafting attorney, who also drafted the LLLP partnership agreement, testified that, if the LLLP was intended to be distributed equally to the four children, it would not have been named for John T. but would have referenced the children as a group.

[¶ 12] Finally, the structure and original language of Paragraph 6 of Article Five also created an inference that a drafting mistake had been made. Mary, Jo Anne, and James contend that Paragraph 6 unambiguously provided that the LLLP was to be distributed in equal shares to the four children's generation skipping trusts through Article Ten, Paragraph 1. If that were the case, then Article Five, Paragraph 6 becomes mere surplusage because, without that specific allocation, the LLLP interests would have become part of the residue of the trust estate and passed in equal shares to the children's trusts under Article Ten, Paragraph 1. In construing the provisions of a trust, the gen-

eral rules of construction of written documents apply and the trust must be read as a whole so as to give effect to every part. *Langer v. Pender*, 2009 ND 51, ¶ 14, 764 N.W.2d 159; *see* N.D.C.C. § 9-07-06. The construction urged by Mary, Jo Anne, and James effectively reads Paragraph 6 out of the trusts.

[¶ 13] In addition, the fact that Article Five, Paragraph 6 makes application of its various provisions dependent upon whether John T. survives the settlor further supports the finding that there was a drafting error. It makes no sense to reference whether John T. survives the settlor if the LLLP was to pass to all four children in equal shares, as Mary, Jo Anne, and James contend. Rather, Paragraph 6 as reformed becomes an example of logical succession: the LLLP interests pass to John T. if he survives, to his descendants if he does not, and then to the other children if neither John T. nor any of his descendants survive the settlor. As originally drafted, Paragraph 6 is ambiguous, and the interpretation urged by Mary, Jo Anne, and James renders part of the trust mere surplusage. The entire structure of Paragraph 6, read in the context of the trust as a whole, makes sense only if the LLLP passes to John T.'s generation skipping trust if he survives the settlor.

[¶ 14] We conclude the district court's findings that it was John A. and Agnes's intent to distribute the LLLP to John T.'s generation skipping trust and that a drafting error occurred which resulted in a mistake in expression in the trust are not clearly erroneous, and the district court did not err in reforming Paragraph 6(a) of Article Five to conform to the settlors' intent.

B

[¶ 15] Mary, Jo Anne, and James argue that, even if Paragraph 6(a) of Arti-

cle Five of the trusts is reformed to distribute the LLLP to John T.'s generation skipping trust, the question remains whether John T. receives the LLLP "off the top" or whether it is included as part of his one-fourth share in the residue of the trusts. Mary, Jo Anne, and James contend that, because the trial court found there was not clear and convincing evidence that John A. and Agnes intended to give the LLLP to John T. "off the top," the trust may not be reformed to give John T. the LLLP in addition to his one-fourth share in the remaining residue of the trusts. This argument misinterprets the district court's findings and ignores the court's authority to construe a trust after provisions have been reformed under N.D.C.C. § 59–12–15.

[¶ 16] The district court resolved this case in a single document encompassing its memorandum opinion, findings of fact, conclusions of law, and order for judgment, which included the following finding:

> No clear and convincing evidence was presented to reform the Trust Agreements to determine whether or not John T. received the LLLP as a part of his one quarter share of the estate, or whether he receive that first, and then receive one-fourth of the balance of the estate.

In its memorandum opinion the court more fully explained this finding:

> Both parties argue that even with this reformation, the Trust Agreements as reformed, dictates whether or not John [T.] gets the farm as a part of his one-fourth share, or gets the farm and then a one-fourth share of the residue estate. Both parties also argue that they have offered clear and convincing evidence outside the Trust Agreements language itself, that establishes whether or not John [T.] received the farm as a part of his one-fourth share, or whether he re-

ceived the farm and then received one-fourth of the residue estate.

> The Court concludes that there was no clear and convincing evidence on this issue *outside of the four corners of the Trust Agreements.* (Emphasis added.)

The district court's finding determined only that the extrinsic evidence offered by the parties did not establish by clear and convincing evidence whether John A. and Agnes intended John T. to receive the LLLP in addition to his one-fourth share, and therefore their intent would have to be gleaned from the four corners of the trust agreements themselves. In other words, the court recognized that John A. and Agnes's intent would have to be determined by construing the trusts as a whole, including the reformed language of Article Five, Paragraph 6.

[¶ 17] The district court's analysis was correct. Having determined there was a mistake in expression and that Paragraph 6(a) of Article Five should have directed distribution of the LLLP to the trustee of John T.'s generation skipping trust rather than "my trustee," the proper analysis then focused upon the effect of that change within the broader context of the trust as a whole. The court appropriately engaged in an examination of the entire trust, including the reformed provision, and concluded that the LLLP did not become part of the trust residue under Article Six subject to equal division among the children, and that under the terms of the trusts John T. was to receive the LLLP in addition to a full one-fourth share in the remainder of the trust estate.

[¶ 18] We agree with the district court's interpretation of the reformed trusts. Although these trusts were complex and voluminous, a broad overview reveals that Article Five provided for distribution of specific items upon the settlor's death; Articles Six, Eight, and

Nine provided for distribution of the residue of the trust estate to a "generation skipping share" to be held for the benefit of the settlor's surviving spouse, if any, and ultimately to the settlor's children's generation skipping trusts [2]; Article Ten, Paragraph 1 directed that when the "generation skipping share" passed to the children it was to be divided into four equal shares; and Article Ten, Paragraph 2 created generation skipping trusts for each of the children to hold their equal shares.

[¶ 19] The trusts created a clear distinction between property distributed as a specific allocation under Article Five and property distributed as part of the residue under Article Six. The last sentence of Article Five provides: "All payments under the preceding Paragraphs of this Article shall be made prior to the final allocation of assets under Article Six of this Agreement." The first sentence of Article Six states: "The remainder of the trust estate, not effectively disposed of under the preceding provisions of this Agreement, shall be handled as follows ...," and the remainder of Article Six creates the generation skipping share which ultimately would be equally divided under Article Ten, Paragraph 1. Thus, in order for property or its value to be included in the four equal shares of the trust residue created under Article Ten, Paragraph 1, it must first become part of the generation skipping share under Article Six. Trust assets distributed as specific allocations under Article Five, including the LLLP, never became part of the generation skipping share under Article Six and therefore could not be included in the residue of the estate to be equally divided under Article Ten, Paragraph 1.

[¶ 20] Significantly, Paragraph 6(a) of Article Five, both before and after its reformation, expressly states that distribution of the LLLP is "to be handled pursuant to Paragraph 2 of Article Ten," not pursuant to Paragraph 1 or Article Ten in general. Paragraph 2 merely creates the generation skipping trusts for each of the children. This is a clear indication that the LLLP was not to be included in the trust residue to be equally split under Article Ten, Paragraph 1, but was merely to be allocated to the generation skipping trust created for John T.'s benefit under Paragraph 2.

[¶ 21] Under the express terms of the trusts, the LLLP passed as a specific allocation under Article Five "prior to the final allocation of assets under Article Six," never became part of the generation skipping share or trust residue, and was not included in the property subject to division under Article Ten, Paragraph 1. Thus, the interests in the LLLP passed directly to John T.'s generation skipping trust and he is entitled to a full one-fourth share in the remaining trust residue under Article Ten, Paragraph 1.

### III

[¶ 22] Although the district court entered a corrected judgment after the notice of appeal was filed, we note that there are still clerical errors in the corrected judgment. The judgment directs "that John T. Gassmann is entitled to receive the John T. Gassmann LLLP (farm)" and "that John T. Gassmann is entitled to receive one-fourth of the remaining estate." It is clear, however, that these assets are to be distributed to the trustee of John T.'s

---

**2.** Article Seven provided for creation of a marital trust for the benefit of the surviving spouse if the amount of the trust estate exceeded the available unified tax credit. John A. died before Agnes and the value of his estate was less than the available unified credit, so the marital trust was never funded.

generation skipping trust to be held for his benefit and are not intended to be received by John T. outright. In addition, another provision of the corrected judgment reforms "Article Six, Paragraph 7(a) of both Trusts" to clarify that Philip J. Gassmann, who received the trusts' shares in an auto supply company, was the settlors' grandson, not their nephew. The correct trust provision referred to should be "Article Five, Paragraph 7(a)," not "Article Six, Paragraph 7(a)." We remand to the district court for correction of these clerical errors in the corrected judgment.

## IV

[¶ 23] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. We affirm the judgment, but remand for correction of clerical errors in accordance with this opinion.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, DALE V. SANDSTROM, and WILLIAM F. HODNY, S.J.

[¶ 25] The Honorable WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.