# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 58

In the Trust of Roger S. Linn Restated Trust Agreement, deceased

Scott Ottum, attorney in fact for
Shirley A. Linn,                    Petitioner, Appellant, and Cross-Appellee

     v.

Wells Fargo Bank, N.A. and Harris W. Widmer
as co-Trustees of the Roger Linn Trust,           Respondents and Appellees

     and

Stephen T. Linn, Deborah R. Wagner,
and Mark Wagner,                    Respondents, Appellees, and
                                        Cross-Appellants

No. 20180206

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven E. McCullough, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Jensen, Justice.

Charlotte J.S. Rusch (argued) and Whitney M. Irish (on brief), Fargo, ND, for petitioner, appellant, and cross-appellee.

Shannon M. Gregor (argued) and Cloe A. Kilwein (on brief), Fargo, ND, for respondents and appellees.

Michael T. Andrews (argued) and Ashley K. Champ (on brief), Fargo, ND, for respondents, appellees, and cross-appellants.

**Jensen, Justice.**

[¶1]    Shirley Linn appeals from a district court order denying her petition seeking a distribution of trust assets, after the court concluded the unambiguous language of the trust agreement did not compel the requested distributions.  Stephen Linn, Deborah Wagner, and Mark Wagner cross-appeal the district court's denial of their request for a recovery of their attorney fees incurred in responding to Shirley Linn's petition.  We conclude the trust agreement's language is ambiguous, and we reverse and remand this case for further proceedings in the district court.

I

[¶2]    In March 1978, Roger Linn executed a revocable trust agreement.  The trust was amended and restated in June 2000.  The trust provided for the distribution of the trust property at the time of Roger Linn's death by dividing the property into two separate trusts; the Linn Family Trust and the Linn Marital Trust.  Roger Linn died in 2003.

[¶3]    Shirley Linn was Roger Linn's spouse at the time of his death and is a beneficiary identified in the trust agreement.  Stephen Linn, Deborah Wagner, and Mark Wagner are remainder beneficiaries.  Wells Fargo and Harris Widmer were named as co-trustees of the original revocable trust, the Marital Trust, and the Family Trust.

[¶4]    The trust agreement provided Shirley Linn with the right to choose one of two residences held by the trust as her principal residence following the death of Roger Linn.  The trust agreement further provided the selected residence would be maintained for her as long as she resided in the residence.

[¶5]    In September 2016, Shirley Linn moved into an assisted living center in Fargo. The Marital Trust paid expenses for Shirley Linn to obtain a residential unit, including

reservation fees, initial rental fees and moving expenses. After moving in, Shirley Linn requested the co-trustees pay the ongoing monthly living costs charged by the assisted living facility, in addition to the monthly income distributions she was receiving from the Marital Trust. The co-trustees continued to make the income distributions from the Marital Trust, but declined to make additional distributions for Shirley Linn's ongoing monthly living costs being charged by the assisted living facility.

[¶6]    Shirley Linn filed a petition with the district court seeking an order requiring the distribution of trust assets to pay the ongoing monthly living costs charged by the assisted living facility. The remainder beneficiaries and the co-trustees opposed the petition.

[¶7]    At issue is the trust agreement's directive to the co-trustees to pay "any obligations the Donor's spouse may incur in acquiring assisted living or nursing home care," as used in Article V(10)(F) of the trust agreement. The co-trustees and the remainder beneficiaries contend that the use of the term "acquiring" limits the directive to the payment of the initial assisted living expenses and excludes the ongoing monthly living costs charged by the assisted living facility. They assert Shirley Linn is already receiving income distributions sufficient to pay the assisted living expenses. Shirley Linn contends, however, that the language is intended to require distributions sufficient to pay the ongoing monthly living costs charged by the assisted living facility regardless of the mandatory income distributions.

[¶8]    All of the parties have asserted the trust document is unambiguous and must be read to support their respective positions. Shirley Linn argues, in the alternative, the trust agreement is ambiguous and the district court should consider extrinsic evidence to determine Roger Linn's intent regarding the payment of ongoing assisted living and nursing home care expenses.

[¶9]    Following an evidentiary hearing on the petition, the district court determined the trust document was unambiguous on its face, held the trust document did not require the payment of the ongoing monthly assisted living and nursing home care

2

expenses, and denied Shirley Linn's petition. After noting that an award of attorney fees is discretionary, the district court summarily denied the Linn-Wagners' request for a recovery of the attorney fees they incurred in responding to her petition.

## II

[¶10] Generally, this Court's primary objective in construing a trust instrument is to ascertain the settlor's intent. *Langer v. Pender*, 2009 ND 51, ¶ 13, 764 N.W.2d 159; *Alerus Fin., N.A. v. W. State Bank*, 2008 ND 104, ¶ 21, 750 N.W.2d 412; *Matter of Estate of Schmidt*, 1997 ND 244, ¶ 13, 572 N.W.2d 430. "When a trust instrument is unambiguous, the settlor's intent is ascertained from the language of the trust document itself." *Hecker v. Stark Cty. Soc. Serv. Bd.*, 527 N.W.2d 226, 230 (N.D. 1994). "Whether or not a trust is ambiguous is a question of law, fully reviewable on appeal." *Id*. "An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the term, phrase, or clause in question." *Vanderhoof v. Gravel Prods., Inc.*, 404 N.W.2d 485, 491 (N.D. 1987) (citing *Heitkamp v. Milbank Mut. Ins. Co.*, 383 N.W.2d 834 (N.D.1986)).

[¶11] In *Langer*, 2009 ND 51, ¶¶ 14-15, 764 N.W.2d 159, this Court discussed the rules for construing trust documents and recognized that the "[g]eneral rules of construction of written documents apply to the construction of trust instruments." Interpretation of a contract is governed by N.D.C.C. ch 9-07. *Hallin v. Inland Oil & Gas Corp.*, 2017 ND 254, ¶ 9, 903 N.W.2d 61. In applying chapter 9-07, N.D.C.C., this Court has stated:

> The parties' intent is ascertained from the writing alone if possible. N.D.C.C. § 9-07-04. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. "When the parties' intent can be determined from the contract language alone, interpretation of a contract presents a question of law." *THR Minerals*[, *LLC v. Robinson*], 2017 ND 78, ¶ 8, 892 N.W.2d 193 (quoting *Border Res., LLC v. Irish Oil & Gas, Inc.*, 2015 ND 238, ¶ 15, 869 N.W.2d 758). When an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent. *Golden* [*v. SM Energy Co.*], 2013 ND 17, ¶ 11, 826 N.W.2d 610.

3

When a contract's language is plain and unambiguous and the parties' intentions can be ascertained from the writing alone, extrinsic evidence is not admissible to alter, vary, explain, or change the contract. *Nichols* [*v. Goughnour*], 2012 ND 178, ¶ 12, 820 N.W.2d 740. If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the contract terms and parties' intent become questions of fact. *Border Res.*, at ¶ 15.

*Hallin*, at ¶ 9.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." N.D.C.C. § 9-07-08. "Particular clauses of a contract are subordinate to its general intent." N.D.C.C. § 9-07-15 (emphasis added). "Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause subordinate to the general intent and purposes of the whole contract." N.D.C.C. § 9-07-17. "Words in a contract which are inconsistent with its nature or with the main intention of the parties are to be rejected." N.D.C.C. § 9-07-18 (emphasis added).

*Langer*, at ¶ 15.

[¶12] Here, the district court held Roger Linn's intent was plain and unambiguous from the agreement's language. The court concluded Article V of the agreement plainly provides for the payment of Shirley Linn's "obligations to 'acquire' assisted living or home care," but there is "no indication in the unambiguous trust agreement" the trust must also provide "directly for her assisted living expenses as well." The court noted that in addition to Article V, Article VII provides all net income for the Linn Marital Trust is to be paid to her during her lifetime and that both of the mandatory distributions have been followed. The court determined that while Articles VI and VII provide the co-trustees with discretion to make a distribution to Shirley Linn for her reasonable comfort and support, the co-trustees have not found additional distributions to be necessary in light of Shirley Linn's continued receipt of the mandatory income distributions. The court held the language gave the co-trustees "the discretion to weigh Shirley's situation, her property and income, and determine whether or not additional distributions are necessary and appropriate" and the co-trustees continue to have that discretion.

4

[¶13]  Shirley Linn argues the district court erred in concluding the trust's directive to the co-trustees to pay "any obligations the Donor's spouse may incur in acquiring assisted living or nursing home care" excluded the ongoing assisted living and nursing home costs.  She argues it is clear from the trust agreement, when read as a whole, Roger Linn's intent was to provide for all of her housing, including her assisted living and nursing home care.  She contends the language of Articles V(10)(F); VII(1), (2); and VI(2)(D), when read together, requires her assisted living or nursing home care obligations to be paid by either the Linn Marital Trust or the Linn Family Trust without consideration of the mandatory income distributions already being paid.  Moreover, she contends the limit on access to the Linn Marital Trust principal in Article VII(2) was not intended to apply to Article V(10)(F).

[¶14]  Shirley Linn also argues the district court erred in finding the use of the word "acquiring" clearly showed Roger Linn's intent was not to pay for her ongoing assisted living or nursing home care.  She asserts the word "acquiring" is ambiguous and includes obligations, such as rent, that she must pay to obtain assisted living each month.  Further, she argues the court erred by relying on one word rather than the trust as a whole.

[¶15]  The co-trustees argue the trust agreement does not require the co-trustees to pay Shirley Linn's ongoing assisted living expenses unless the express standards for invading trust principal are met.  They agree the co-trustees are required to pay the necessary expenses to acquire an assisted living "unit," but they do not read Article V(10)(F) as a mandatory directive to pay for the ongoing expenses of assisted living and nursing home care.

[¶16]  In support, the co-trustees assert that a separate trust does not exist for her assisted living or nursing home care, that mandatory principal payments from either trust for ongoing assisted living expenses contravenes the existing terms for invasion of the trust principal, and that Roger Linn intended the trust only acquire assisted living or nursing home care for Shirley Linn.  They assert that, after the initial

acquisition, the marital trust's net income—enhanced by the home sale and reduction of trust expenses—may be used to maintain her assisted living and nursing home care, and only if those funds are insufficient, should discretionary distributions of principal be used to pay the ongoing expenses of assisted living and nursing home care. They contend that because the language is plain and unambiguous, extrinsic evidence cannot be considered to create an ambiguity.

[¶17] The remainder beneficiaries make many of the same arguments as the co-trustees, also focusing on the trust agreement's use of "acquiring," as opposed to "maintaining," when referring to trust obligations. The remainder beneficiaries contend the trust clearly differentiates between acquiring and maintaining certain property. They assert Shirley Linn's assisted living expenses are subject to the trust's conditions and limitations on invading the trust principal. They assert where a beneficiary's right to demand trust principal is qualified, the trustee owes the other beneficiaries a duty to make some investigation to learn whether the condition precedent to the right to principal exists.

[¶18] From our review of the trust agreement, in light of the parties' arguments, we conclude the parties have posited rational arguments for different interpretations of the trust agreement. We, therefore, conclude the trust agreement's directive for the co-trustees to pay "any obligations the Donor's spouse may incur in acquiring assisted living or nursing home care" is ambiguous, thus creating an issue of fact about Roger Linn's intent with regard to the trust's obligation to provide for Shirley Linn's ongoing assisted living expenses. The district court is required to make factual findings regarding Roger Linn's intent with regard to the ambiguous language and is free to consider extrinsic evidence to aid in making those findings.

[¶19] The remainder beneficiaries argue the district court erred in the denial of their request to recover attorney fees incurred in responding to Shirley Linn's petition. Because we remand this case to the district court for additional findings regarding Roger Linn's intent, which may or may not result in the same conclusion being

6

reached by the district court, the recovery of attorney fees should also be reconsidered by the district court on remand.

[¶20] The directive to the co-trustees to pay "any obligations the Donor's spouse may incur in acquiring assisted living or nursing home care" is ambiguous. We reverse and remand this case to the district court to make findings on the evidence regarding Roger Linn's intent with regard to the payment of the ongoing assisted living and nursing home care expenses and to make further findings regarding the remainder beneficiaries' request for a recovery of attorney fees.

IV

[¶21] The district court order is reversed, and the case is remanded for further proceedings consistent with this opinion.

[¶22]   Jon J. Jensen
        Lisa Fair McEvers
        Jerod E. Tufte
        Anthony S. Benson, D.J.
        Gerald W. VandeWalle, C.J.

[¶23] The Honorable Anthony S. Benson, D.J., sitting in place of Crothers, J., disqualified.

7